**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA ex rel., | * | |
| VICTOR E. BIBBY and | * | |
| BRIAN J. DONNELLY | * | |
| | * | CIVIL ACTION |
| Relators, | * | |
| | * | FILE NO. 8:17-mc-74-T-36 MAP |
| v. | * | |
| | * | |
| MORTGAGE INVESTORS | * | |
| CORPORATION and | * | |
| WILLIAM L. EDWARDS, | * | |
| | * | |
| Defendants. | * | |

**RELATORS' NOTICE PURSUANT TO COURT'S ORDER OF JUNE 27, 2017 [Doc. 4][1]**

Pursuant to the Court's Order, Relators state that transfer of Marketing Solution Publication Inc.'s ("MSP") motion to quash to the Court where the underlying case is pending, the Northern District of Georgia, Atlanta Division, Judge Amy Totenberg presiding (the "issuing Court") is appropriate and should be ordered.[2]  *See* Fed. R. Civ. P. 45(f).

**I.   Introduction**

MSP has asked the Court to quash a deposition subpoena served by Victor Bibby and Brian Donnelly ("Relators") on it and issued by the Court in *United States ex rel. Victor Bibby &*

---

[1] Relators were preparing a formal motion to transfer this dispute to the Atlanta District Court when the Court entered its Order directing the parties to file a notice stating whether the motion should be transferred.

[2] Relators have asked counsel for MSP at least three times whether MSP will consent to transferring this dispute to the Atlanta court. To date, MSP has not responded.

*Brian Donnelly v. William L. "Bill" Edwards and Mortgage Investors Corporation*, Case No. 12-CV-04020 (the "Edwards/MIC Case"). The issue presented in MSP's motion to quash should be decided by the issuing Court where the Edwards/MIC Case has been pending for eleven years and has been actively managed by the issuing Court.

Trying to summarize what has happened (and is happening now) in the Edwards/MIC Case and why MSP's motion should be transferred is a daunting task. There are nearly 800 docket entries in the Edwards/MIC Case and more than 1200 entries in a related action against Wells Fargo. *See U.S. ex rel. Bibby & Donnelly v. Wells Fargo Bank, N.A.*, Case No. 1:06-cv-547-AT. **Just since January 2016**, the issuing Court has entered more than 75 orders just in the Edwards/MIC Case. Both the issuing Court and an appointed discovery Special Master have been very active in the management of the case, primarily with the management of discovery issues, including issues related to MSP.

Relators seek to depose MSP in connection with their veil-piercing claims against MIC and Edwards. Relators allege that MIC's corporate veil should be pierced because Edwards – who was MIC's sole-director and its majority shareholder – abused the MIC corporate form by paying himself and his wholly owned entity MSP significant sums for no legitimate purpose and without appropriate corporate oversight or documentation. At times, MSP was paid MIC and Edwards have refused to produce in the Edwards/MIC Case. Whether those payments were legitimate and followed proper corporate formalities is a significant issue in the Edwards/MIC Case.

The issuing Court has already considered discovery related to MSP issues. On May 17, 2017 the issuing Court entered an Order on the appropriate scope of document discovery related

2

to the MSP payments. *See* Edwards/MIC Case, Doc. 770, attached as Ex. A. After the issuing Court entered the May 17 Order and Edwards produced some documents, Relators filed a request for additional documents. *See* Edwards/MIC Case, Doc. 776, Doc. 798,[3] attached as Ex. B. The issuing Court directed Edwards to respond to Relators' request and set a telephone conference on the request for June 12, 2017. *See* Edwards/MIC Case, Doc. 776. During the June 12 conference, the issuing Court referred Relators' additional requests to appointed discovery Special Master, Robert Dokson. Mr. Dokson conducted a telephone hearing on Relators' requests on June 22. After Mr. Dokson issues his report and recommendation, the parties will have two business days to file any objections.

In addition to the foregoing, Relators recently informed the issuing Court that they would be seeking a deposition of MSP.[4] In the hearing that followed, the Court expressed no concern with a MSP deposition going forward. Instead, the issuing Court told the defendants that it believed a prior attempt to force litigation of a subpoena issue in a different district Court[5] was "not necessary and delayed things." May 15, 2017 Hrg. Tr. at 21/7-12, excerpts attached as Ex. D.

---

[3] There are two document numbers for this filing because Relators' request was initially filed under seal. After the issuing Court granted Relators' motion to seal Doc. 776, Relators filed a redacted version of the pleading on June 26. The redacted filing is attached without exhibits.

[4] *See* Edwards/MIC Case Doc. 797 at 5 (Relators' Reply in Support of Motion for Extension of Current Fact Discovery Deadline). As Relators informed the issuing Court, "Relators intend to take four depositions: of Mr. Edwards, of MIC shareholders Linda Edwards and Derek VanHoose and of Edwards' wholly owned company Marketing Solution Publications ('MSP')."

[5] Relators served a subpoena on the company owned by one of the defendants' experts. The same lawyers representing the defendants entered an appearance on behalf of the experts' company and filed a motion to quash in the District of New Jersey. After four months of litigation, the New Jersey Court transferred the motion to quash to the Atlanta Court. *See* April 18, 2017 Opinion, Case. No 17-302 D. NJ, attached as Ex. C.

In addition, the Edwards/MIC Case is finally, after many years of extremely contentious litigation, approaching a trial, but getting to trial is dependent entirely on the existing schedule not being disrupted again. A true and correct copy of the current scheduling Order is attached Ex. A. The parties are operating under an extremely tight discovery deadline – discovery was just extended again and Relators have until July 17 to complete all discovery into their veil-piercing claims, , including MSP's deposition which is set for July 12. All other deadlines – including through summary judgment briefing – follow that July 17 end date. It would be burdensome for this Court to get up to speed on the complicated factual issues and the prior orders of the issuing Court in order to resolve this discovery dispute in time to avoid disrupting the existing scheduling order. Indeed, the issuing Court has already expressed concern that filings in other districts would disrupt the schedule. As Judge Totenberg noted when she recently extended discovery by 60 days:

> "[Obviously] I would like the 60 days to not end up being 120 days. And so part of that means that I can't have constant N[otices of Dispute] or … any additional discovery motions being brought in other districts, frankly. If [defendants] do, that is [thei]r choice. But then I'm going to just keep on extending discovery. And at some point I'm going to think this is not in good faith."

Ex. D, May 15, 2017 Hrg. Tr. at 38/1-9.

In addition, the Edwards/MIC defendants have designated the more than 250,000 pages produced in discovery and the majority of the key deposition testimony as "confidential," which will require Relators' filings in this district to be made under seal. Even some of the basic pleadings in the Edwards/MIC Case, including the operative complaint and at least one relevant

Order, are partially confidential and under seal. The issuing Court has an established procedure to deal with the filing of confidential documents. By having to litigate MSP's subpoena in this Court, a host of new and complicated sealing issues will be presented to this Court.

Most importantly for purposes of this motion, there will be no burden on MSP to resolve this discovery dispute in Atlanta. Edwards – who is MSP's sole owner and officer – is already represented by lawyers from the Atlanta office of Greenberg Traurig in the Edwards/MIC Case. But if Edwards decides that he wants MSP to continue using its Holland & Knight Florida counsel to litigate this dispute, under Rule 45, MSP's counsel can take part in any proceedings in Atlanta without obtaining local counsel or being admitted *pro hac vice*. *See* Fed. R. Civ. P. 45(f) (Upon transfer, "if the attorney for a person subject to a subpoena is authorized to practice in the court where the motion was made, the attorney may file papers and appear on the motion as an officer of the issuing court"). The vast majority of the hearings and conferences in the Edwards/MIC matter (more than twenty in the last year alone) are conducted through telephone conferences in order to accommodate the out-of-state lawyers already representing the defendants. Thus, if Judge Totenberg decides this issue as Relators believe she should, it likely will only require that MSP's counsel take part in a telephone conference to argue the motion to quash. The last time the defendants in this case lost a Rule 45(f) motion, Judge Totenberg resolved the motion to quash without any additional briefing, without any additional hearings and in twenty days after the motion was transferred back to Atlanta.

Given the extensive record, the tight discovery deadlines, the issuing Court's past and present resolution of similar issues, the confidentiality issues, and the lack of burden on MSP, there are exceptional circumstances requiring the transfer of MSP's motion to quash to the

issuing Court pursuant to Federal Rule of Civil Procedure 45(f). Relators respectfully request that this Court transfer MSP's motion to quash to the issuing Court.

## II.     Statement of Facts

### a.     Case Background

This case was filed under seal in 2006 and has been actively litigated since October 2011 when the seal was lifted. Relators are former mortgage brokers who uncovered an industry-wide scheme by banks, including Mortgage Investors Corporation ("MIC"), to defraud veterans obtaining VA refinance loans ("IRRRLs") and to falsely certify compliance with federal regulations in order to fraudulently obtain government loan guaranties. *See generally* Edwards/MIC Doc. 352 (Relators' Fourth Am. Compl.).

The IRRRL program is a streamlined loan refinance program for veterans with existing VA loans. The program has very specific regulations governing the types of fees that veterans can pay when they obtain an IRRRL. Under federal regulations, when a lender charges a 1% loan origination fee, there are several kinds of "unallowable fees" the veteran cannot be charged, including closing fees and attorneys' fees. The veteran may pay the actual fees for title work and title insurance so long as those fees are reasonable and customary. The lender is supposed to cover any unallowable fees with the 1% origination fee.

Relators uncovered a scheme where lenders would avoid paying unallowable fees by 'bundling' the unallowable fees into allowable fees for title work and title insurance. By 'bundling' the unallowable fees into allowable fees, lenders were able to conceal the unallowable fees from both the veterans and the VA. The result was that veterans were made to pay $200 - $1000 in hidden unallowable fees on tens of thousands of loans closed by lenders nationwide.

In addition to defrauding veterans, the lenders' scheme violated the False Claims Act because in order to obtain government guaranties on the loans, lenders had to certify that no unallowable charges were imposed on the veteran. When the loans went into default, the government paid out billions of dollars that it did not otherwise owe. The loss to the government as a result of this fraud has been massive. The trebled damages in the Edwards/MIC Case are in excess of $786 million, excluding penalties and attorneys' fees.

When the Edwards/MIC Case was unsealed in October 2011, there were eight defendants. Before waiting for the Court to rule on pending motions to dismiss, six of the eight original defendants settled with the Relators, paying more than $172 million dollars to do so. The two defendants who did not settle were MIC and Wells Fargo ("WF"). In November 2012, the issuing Court denied a motion for summary judgment filed by MIC, denied a motion to dismiss filed by WF and then severed the two actions.[6] Since that time, the issuing Court has denied two additional attempts by MIC and one attempt by Edwards to be dismissed from the case.

The Edwards/MIC Case has been in discovery since December 2012. Discovery has been extremely challenging for reasons that are far too complicated to fully explain in this filing. Relators have had issues obtaining even the most basic documents from the defendants about the MIC loans at issue and the Court has extended discovery at least nine times.

Before October 2015, the Court had an accelerated discovery dispute resolution procedure, *see* Edwards/MIC Case, Doc. 23 at 18-19 ("Guidelines In Cases Proceeding Before

---

[6] Even though the WF case was severed from the Edwards/MIC Case, the issues are very similar and the Court frequently rules on issues that affect both cases and frequently has joint hearings.

Honorable A. Totenberg), and most disputes were resolved with limited briefing and telephone conferences with the Court.  Despite the Court's accelerated discovery resolution procedures, the number and frequency of discovery disputes led the Court to appoint a full time discovery Special Master in October 2015.  Edwards/MIC Case, Doc. 254.

Since the appointment of the Special Master, parties are required to file Notices of Dispute ("NoD") with the Court whenever a discovery dispute arises.  Edwards/MIC Case, Doc. 255 at 3.  The opposing party has two business days to respond.  Thereafter, the Court decides whether to keep the dispute or to refer the dispute to the Special Master.  *Id.* at 4.  In addition to resolving referred disputes, the Special Master also has periodic status conferences with the parties to discuss the progress of discovery so that he can report to the Court on any forthcoming issues and generally oversee discovery progress.  *Id.* at 8.  Since the Special Master was appointed in October 2015, the parties have filed more than 25 NoDs in the Edwards/MIC Case and 10 NoDs in the companion WF case.  Out of those more 35 disputes resolved by the Court or the Special Master, only one involved an in-person hearing: the remainder were resolved through telephone conferences or on the papers.

Another major complicating factor in the Edwards/MIC Case has been the defendants' conduct outside these proceedings.  In June 2015, Relators learned that after the Court denied MIC's motion for summary judgment, MIC liquidated substantially all of its assets to MIC's CEO and majority shareholder Edwards.  The late revelation of those massive transfers caused the Relators to immediately seek to amend their complaint to recover against Edwards for fraudulent transfer and to seek a ruling that the MIC veil should be pierced and a judgment entered directly against Edwards for Relators' FCA claims.  Edwards/MIC Case, Doc. 147.

After multiple rounds of briefing, the issuing Court concluded Edwards is a proper defendant to Relators' FCA claims under a veil piercing theory. Edwards/MIC Case, Doc. No. 550.

As the issuing Court acknowledged in its October 21, 2016 Order, Relators alleged in their Fourth Amended Complaint that "Edwards 'direct[ed] MIC to distribute more than $270 million to Edwards, his wholly owned corporations, and to other MIC shareholders,' 'exercised complete control over MIC in order to commit a fraud on the U.S. Government and Relators' and 'now has most of the money that should be available to pay a judgment in this case.'" *Id.* at 9. As a result, Relators allege that "'MIC's corporate veil should be pierced' because 'Edwards is, legally, MIC' and so '[a]ny judgment against MIC for violation of the FCA should be entered against Edwards personally.'" *Id.* Since Edwards was added to the case, the frequency of the parties' discovery disputes have greatly increased.

On November 22, 2016, the issuing Court entered a scheduling Order that allowed for a limited period of discovery related to veil piercing followed by summary judgment briefing on all issues. *See* Edwards/MIC Doc. 581, Order attached as Ex. E. The issuing Court's November 22, 2016 Order called for a fact discovery period related to Relators' veil piercing claims of January 2, 2017 to March 10, 2017. *Id.*

Since the discovery period into the veil piercing issues started, discovery disputes have proliferated. Relators served limited and targeted discovery into veil piercing on January 2, but the defendants did not comply with the requests. By March 10, Relators had not received responses to three of the four sets of discovery they had served and the Court extended discovery over the defendants' objection. *See* Edwards/MIC Doc. 713. As the Court noted when it extended discovery, the discovery period had to be extended "due to the extensive problems

9

encountered by the parties." *Id.* The Court extended veil-piercing fact discovery through May 12, 2017. *Id.* at 2.

During the same time period that the parties started veil piercing discovery, defendants' lawyers at DLA Piper filed a motion to quash a subpoena served by Relators on the defendants' expert in the District Court of New Jersey. That filing by defendants resulted in over 100 pages of briefing and a delay of almost four months. Ultimately, the New Jersey District Court transferred the dispute back to Atlanta finding that factors such as "efficiency and consistency" outweighed any burden on the non-party. Ex. C, at 4. The New Jersey Court also concluded, "the Issuing Court has established a discovery schedule and a dispute resolution procedure which involves continuing management by a Special Master" and that it was "loath to disturb those structures, especially considering the long history and complexity of the litigation." *Id.* Finally, the New Jersey Court held that the issuing Court had confronted similar issues previously and that weighed in favor of transfer. *Id.* The New Jersey Court transferred the motion to quash to Atlanta on April 18, 2017, and the Atlanta Court entered an Order denying the motion to quash on May 8, 2017. *See* Edwards/MIC Doc. 761.

Discovery issues have persisted throughout the extended veil-piercing discovery period and Relators have been unable to take any depositions. Relators were forced to again move to extend the veil-piercing discovery period again on April 27, 2012. *See* Edwards/MIC Doc. 755. Again, the defendants opposed. As discussed above, Relators told the Court that the primary reason they needed an additional extension was because they wanted to take depositions, including a deposition of MSP. *See* supra Note 2. It was during the hearing on Relators' requested extension that the Court discussed the potential for filings in other states disrupting the

Court's schedule and necessitating additional extensions. Ultimately, the Court overruled the defendants' objection to another extension and entered an Order extending discovery through July 17. *See* Ex. A.

### b. Current Schedule

Under the current schedule, fact discovery into Relators' veil piercing is set to end on July 17, 2017. *See* Ex. A. Veil-Piercing experts are to be identified on July 21, 2017. Veil-Piercing expert reports are to be served on September 4, 2017, with depositions completed by October 6, 2017. Summary judgment motions are to be filed on November 3, 2017, with responses filed on December 1 and replies due December 22, 2017.

### c. The MSP Subpoenas

Relators served a document subpoena on MSP in January 2017. MSP objected to producing documents and filed a motion to quash the subpoena in this Court. *See* Doc. 1, *United States of America ex rel. Victor E. Bibby and Brian J. Donnelly v. Mortgage Investors Corporation and William L. Edwards*, File No. 8:17-mc000016-JSM-TBM (the "Document Subpoena Action"). After MSP moved to quash Relators' deposition subpoena, MSP counsel suggested that because Edwards is the sole owner and officer of MSP and therefore in control of MSP's documents, Relators would be better served by seeking MSP documents "directly from Mr. Edwards" in the Atlanta action.

Relators agreed and served a discovery request on Edwards seeking the same documents that they previously sought from MSP (the "Edwards MSP Request"). As a result, Relators filed an unopposed motion in this Court seeking to stay their obligation to respond to MSP's motion to quash the document subpoena until 14 days from the date that the Atlanta Court ruled on the

Edwards MSP Request. *See* Doc. 6, 8:17-mc000016-JSM-TBM. This Court entered an Order granting Relators' unopposed motion to stay and administratively closed the Document Subpoena Action on March 1, 2017. Doc. 7, 8:17-mc000016-JSM-TBM. After the issuing Court entered an Order directing Edwards to produce some of the MSP documents and Edwards complied, Relators withdrew the document subpoena to MSP. Doc. 8, 8:17-mc000016-JSM-TBM.

Relators contacted MSP counsel regarding a MSP deposition on May 9, 2017. On that date, Relators asked MSP counsel whether MSP would consent to a 30b6 deposition. *See* Email chain between Robert Snyder and Bradford Kimbro, attached as Ex. F. MSP counsel stated at that time MSP could not agree to a 30b6 deposition without a definitive list of topics and MSP would likely object to any deposition subpoena before this Court entered an Order lifting the stay in the Document Subpoena Action. *Id.* On June 1, after the issuing Court entered an Order directing Edwards to produce MSP documents and Edwards complied, Relators sent a proposed list of deposition topics to MSP and asked again whether MSP would agree to a deposition and to resolve any objections in the issuing Court. *Id.* MSP responded on June 6, stating that "no final decision" had been made as to whether MSP would agree to a deposition and asking whether Relators wanted to "go ahead and issue the subpoena to start the discovery process in the meantime." *Id.* Relators served the subpoena the same day, noting that Relators had hoped to "have a good faith discussion about the deposition subpoena before it was issued" but that time constraints required that the subpoena be served. *Id.* On June 15, Relators asked again whether MSP intended to file a motion to quash in this Court and if MSP would consent to transfer any dispute related to the subpoena to the issuing Court. *Id.* On the same day, MSP

counsel stated that they had "no update" on what position MSP intended to take. *Id.*

Five days later without seeking to meet and confer about the scope of the deposition topics or any other issue, MSP filed its motion to quash. Doc. 1. MSP's position is that no deposition on any topic is appropriate. MSP also appears to argue that if it is ordered to sit for a deposition then another round of briefing should follow on the appropriate deposition topics. Doc. 1 at 1.

### d. Similar Issues Addressed By the Issuing Court

The issuing Court has already considered the appropriate scope of documentary discovery related to the MSP/MIC transactions. On February 23, 2017, the issuing Court directed Relators to serve formal discovery requests on Edwards seeking the same documents that were sought in Relators' document subpoena to MSP and shortened the time for Edwards to respond to the request. *See* Edwards/MIC Case, Doc. 685 (Minute Order following 2/23 hearing). Relators served their request on Edwards on February 23. Doc. 684. After Edwards objected to producing any of the requested documents, Relators asked the issuing Court to Order Edwards to produce the requested documents. Edwards/MIC Case, Doc. 707. The Court set a status conference with the parties for May 15 to discuss outstanding discovery issues. During that May 15 call, the Court heard extensive argument from both Relators' counsel and Edwards' counsel regarding the MSP document requests.

On May 17, the issuing Court entered an Order directing Edwards to produce some of the documents requested by Relators. Edwards/MIC Case, Doc. 770, attached as Ex. A. The issuing Court ordered Edwards to produce corporate documentation and documentation of payments to MSP from MIC, noting that the requested documents, "could be relevant to Relators' veil-

13

piercing theory of liability insofar as such documents might show Edwards exercising control over MIC, co-mingling of funds, or ignoring MIC's corporate formalities when directing payments from MIC to his wholly-owned entity MSP." *Id.* at 2. The issuing Court declined to Order Edwards to produce documents showing the number of MSP employees, MSP's tax returns and documents showing work done by MSP for other companies, but expressly left open the possibility that Relators could seek those documents at a later date. *Id.* at 4.

On May 22, Edwards produced MSP documents. After reviewing the documents, Relators filed a request for additional documents from Edwards related to the MSP transactions. Edwards/MIC Case, Doc. 776, 798, redacted version attached as Ex. B. The issuing Court instructed Edwards to respond to Relators' request for additional documents by June 7 and set a conference on the request for June 12. Edwards/MIC Case, Doc. 778. On June 12, the issuing Court referred the dispute to the Special Master. The Special Master considered argument from all parties on June 22 and is currently drafting a Report & Recommendation. After the Special Master serves his R&R, the parties have two days to file any objections with the issuing Court.

## III.  Argument

There is absolutely no reason why this Court should be burdened with resolving this issue. The issuing Court is intimately familiar with the issues of the case and has an accelerated discovery dispute resolution procedure in place. Given the tight deadlines to complete discovery in this matter and the lack of burden on MSP to resolve this issue in Atlanta, the motion to quash should be transferred to the issuing Court.

Pursuant to Federal Rule of Civil Procedure 45(f), "[w]hen the court where compliance is required did not issue the subpoena, it may transfer a motion under this rule to the issuing court

if the person subject to the subpoena consents or if the court finds exceptional circumstances." MSP has not consented to a transfer, so this Court must determine whether "exceptional circumstances" justify transferring this motion to the issuing Court. Relators respectfully submit that these are "exceptional circumstances" and the motion should be transferred.

The Advisory Committee Notes to Rule 45 state "transfer may be warranted in order to avoid disrupting the issuing court's management of the underlying litigation, as when that court has already ruled on issues presented by the motion or the same issues are likely to arise in discovery in many districts." Fed. R. Civ. P. 45(f) advisory committee's notes to 2013 amendment.[7]

Courts considering whether transfer is appropriate have concluded "the Court must account for the complexity, procedural posture, duration of pendency, and the nature of the issues pending before, or already resolved by, the issuing court in the underlying litigation." *Judicial Watch, Inc. v. Valle Del Sol, Inc.*, No. 14–mc–0538–(BAH), 2014 WL 4954368, at *3 (D.D.C. Oct. 3, 2014); *see also Virnetx, Inc. v. Apple Inc.*, No. 13-80769-MC, 2013 WL 12108440, at *3 (S.D. Fla. Sept. 26, 2013), report and recommendation adopted, No. 13-MC-80769, 2013 WL 12108441 (S.D. Fla. Nov. 18, 2013) ("The underlying litigation has been ongoing for more than three years and involves numerous parties and issues; denying transfer in this District while the other districts with pending motions may or may not do the same would only add to the confusion and complexity of the underlying litigation.").

---

[7] The Advisory Committee notes also suggest the compliance court should contact the issuing court for guidance on transfer issues. Relators respectfully request that this Court contact Judge Totenberg and discuss this issue.

Courts have found exceptional circumstances to transfer where the issuing court has ruled on similar issues and there is a risk of inconsistent judgments. *See, e.g.*, *Virnetx, Inc.*, 2013 WL 12108440, at *3 ("[B]ecause the judge handling the underlying litigation is in the best position to make a cohesive ruling on the identical motions pending in three district courts, and because other nonparty protections exist, transfer would be the most efficient and effective resolution of the pending motions."); *Chem-Aqua, Inc. v. Nalco Co.*, No. 3:14-MC-71-D-BN, 2014 WL 2645999, at *3 (N.D. Tex. June 13, 2014) (transfer appropriate where issuing "court has already ruled on issues presented by the motion to quash and motion to compel or the same issues may arise in discovery"); *Moon Mountain Farms, LLC v. Rural Cmty. Ins. Co.*, 301 F.R.D. 426, 429–30 (N.D. Cal. 2014) (same); *Google, Inc. v. Digital Citizens All.*, No. MC 15-00707 JEB/DAR, 2015 WL 4930979, at *3 (D.D.C. July 31, 2015) (same); *Valle del Sol, Inc. v. Kobach*, No. 14-MC-219-JAR, 2014 WL 3818490, at *4 (D. Kan. Aug. 4, 2014). Here, the issuing Court has already ruled on the appropriate scope of discovery with regard to MSP and is still considering Relators' request for additional documents. Thus the issuing Court is in a better position to determine the propriety ofa deposition. If this Court enters an Order on MSP's motion to quash there is a risk of inconsistent judgments between the two Courts. Rule 45(f) specifically contemplates transfer under those circumstances.

Courts have also found exceptional circumstances to transfer where resolution of the motion could affect the issuing court's schedule for discovery completion. *See Argento v. Sylvania Lighting Servs. Corp.*, No. 2:15-CV-01277-JAD-NJ, 2015 WL 4918065, at *6 (D. Nev. Aug. 18, 2015) (compliance court could "think of few intrusions more disruptive to the issuing court's ability to manage the underlying litigation than an order from th[e compliance] Court that

16

may well impact the ability of the case to move forward in the [issuing court] on the timetable preferable to [issuing court's judge]; *Cadence Pharm., Inc. v. Multisorb Techs., Inc.*, No. 16MC22G, 2016 WL 4267567, at *6 (W.D.N.Y. Aug. 15, 2016) (motion should be transferred where parties only had a short time to complete discovery); *Duck v. United States Sec. & Exch. Comm'n*, 317 F.R.D. 321, 325 (D.D.C. 2016) (same); *Fed. Home Loan Mortg. Corp. v. Deloitte & Touche LLP*, 309 F.R.D. 41, 43–44 (D.D.C. 2015); *Google, Inc.*, 2015 WL 4930979 at *3 (same).  The parties have less than three weeks to complete discovery into Relators' veil-piercing claims and the entire Edwards/MIC Case schedule is dependent on completing that discovery in a timely manner.  Relators respectfully submit that the issuing Court is in a better position to quickly dispose of this dispute, or alternatively, to make whatever adjustments to the schedule are necessary if an Order is not quickly forthcoming.

Courts also have found exceptional circumstances to transfer a motion to quash back to the issuing court where the issuing court has an "intimate familiarity" with the issues surrounding the case and any prior related cases.  *See Cadence Pharm.*, 2016 WL 4267567 at *6. That is particularly true where the issuing court has resolved "innumerable discovery disputes" and therefore is "in a far better position than th[e compliance court] to evaluate the relevance of, and necessity for, the documents demanded." *Judicial Watch, Inc. v. Valle Del Sol, Inc., 307 F.R.D. 30, 35 (D.D.C. 2014); see also In re UBS Fin. Servs., Inc. of Puerto Rico Sec. Litig.*, 113 F. Supp. 3d 286, 287–88 (D.D.C. 2015) (complex issues warranted transfer); *XY, LLC v. Trans Ova Genetics, L.C.*, 307 F.R.D. 10, 12 (D.D.C. 2014) (same); *Google, Inc.*, 2015 WL 4930979 at *3 (same); *Wultz v. Bank of China, Ltd*, 304 F.R.D. 38, 46–47 (D.D.C. 2014) (same).  The issuing Court is extremely familiar with this case and with the issues presented in MSP's motion.

Determining whether MSP should comply with Relators' subpoena will require a fulsome consideration of Relators' claims, the evidence against defendants, and MSP's ties to those claims. Respectfully, the issuing Court is in a far better position to quickly determine those issues. Judicial economy alone supports a transfer – there is no need for this Court to wade into this complicated case when the issuing Court is already well-versed in the issues. In addition, the Edwards/MIC Case is a bench trial – only the issuing Court can determine whether it believes a MSP deposition will be helpful to resolving the factual issues that have to be decided by the Court.

Finally, courts have found exceptional circumstances to transfer a case back to the issuing Court when many of the documents to be considered by the compliance Court are likely to be filed under seal. *See Cadence Pharm.*, 2016 WL 4267567 at *6. The defendants in this case have designated every single page of every single document produced – more than 250,000 – along with the key deposition testimony as confidential. Relators will need to file and refer to documents produced by the defendants in connection with their response to the motion to quash. Relators have refrained from doing so in this pleading in order to avoid any delay. They will not be able to do so in their response to MSP's motion to quash. Thus, this Court will have to resolve a motion to seal (which in turn will require a consideration of the necessity and appropriateness of keeping the issues discussed in these briefs from the public.) The issuing Court has considered and ruled on dozens on motions to seal in the Edwards/MIC Case and in the related Wells Fargo case and is in a better position to deal with the complex sealing and confidentiality issues quickly and without any additional burden on judicial resources.

Exceptional circumstances warrant transferring this motion to the issuing Court. The

only remaining consideration is whether the burden on MSP outweighs the reasons justifying transfer. As noted above, Judge Totenberg uses a simplified dispute resolution procedure. Nearly all issues are resolved by telephone hearings, if a hearing is granted at all. Edwards is already represented by Atlanta counsel at Greenberg Traurig who have made extensive arguments with regard to the appropriate scope of discovery into the MSP payments. But if Edwards wants MSP to continue to be represented by the Florida Holland and Knight counsel that filed the motion to quash, those counsel can appear in Atlanta without obtaining local counsel or seeking *pro hac vice* admission, Fed. R. Civ. P. 45(f).[8] Relators' predict that this dispute will be resolved by the Court with one phone call. The burden on MSP is extraordinarily slight and the exceptional circumstances manifest.

## IV. Conclusion

Relators respectfully request that this Court enter an order transferring MSP's motion to quash to the issuing Court.

Respectfully submitted this 27th day of June, 2017.

/s/ Robert H. Snyder
ROBERT H. SNYDER – LEAD COUNSEL
Florida Bar No. 108381
Butler Wooten & Peak LLP
2719 Buford Highway
Atlanta, GA 30324
(404) 321-1700
(404) 321-1713 Fax
rob@butlerwooten.com

---

[8] Even obtaining local counsel would be no burden if it was required – Edwards is already represented by local counsel and Holland & Knight have a large office in Atlanta.

## **CERTIFICATE OF SERVICE**

This is to certify that on June 27, 2017, I electronically filed RELATORS' NOTICE PURSUANT TO COURT'S ORDER OF JUNE 27, 2017 [Doc. 4] with the Clerk of the Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

Bradford D. Kimbro
Kendyl B. Tash
HOLLAND & KNIGHT LLP
100 N. Tampa Street, Suite 4100
Tampa, FL  33602

                                              BY: /s/ Robert H. Snyder
                                              ROBERT H. SNYDER
                                              Florida Bar No. 108381
                                              Butler Wooten & Peak LLP
                                              2719 Buford Highway
                                              Atlanta, Georgia 30324
                                              (404) 321-1700
                                              (404) 321-1713 Fax
                                              rob@butlerwooten.com